UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MASHAMA HILL,

                              Plaintiff,

                                                              **Hon. Hugh B. Scott**

              v.
                                                              10CV538S

                                                              **Report
                                                              &**
DANIEL STEWART, et al.,                                       **Recommendation**

                              Defendants.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)
(Docket No. 17). The instant matters before the Court are (a) Niagara County defendants'
(Thomas Beilein, Sam Muscarella, John Saxton, and Duane Vandetta) joint motion for summary
judgment (Docket No. 59) and (b) plaintiff's "Counter Summary Judgment Motion" seeking
partial summary judgment as to liability (Docket No. 65).

Responses to the defense motion were due by June 26, 2012, and any reply was due by
July 6, 2012 (Docket No. 60). When plaintiff cross moved, responses to that motion (beyond the
defense motion) were due by August 31, 2012, and all motions were deemed submitted as of
August 31, 2012 (Docket No. 66).

In support of their motion, the moving defendants submit their Statement of Undisputed
Facts, the Appendix to that Statement with exhibits (plaintiff's grievances, his disciplinary
hearing, his medical records while in the Niagara County jail, and Niagara County Jail General
Orders 1305 and 1576) (Docket No. 59), the Declaration of Daniel Engert, the administrative

captain and records custodian, Corrections Division, Niagara County Sheriff's Department (id., Engert Decl. ¶¶ 1, 4), their Memorandum of Law (id.); Reply Declaration (Docket No. 63); their Response to Plaintiff's Statement of Undisputed Material Fact (Docket No. 68), in opposition to plaintiff's cross-motion; and their Objection to Plaintiff's Counter Motion for Summary Judgment (Docket No. 69).

In opposition, plaintiff submits his Response (Docket No. 64) and his own cross-motion (Docket No. 65), including a Memorandum of Law, exhibits (copies of grievance files and duplicates of motion papers) (id.); and Response to Defendants' Reply Declaration (Docket No. 67).

## BACKGROUND

As previously stated (see Docket No. 31, Report & Recommendation of Aug. 12, 2011, adopted, Docket No. 43, Order of Jan. 24, 2012), this is a civil rights action by a pro se plaintiff alleging deprivation of his rights while he was in punitive segregation in the Niagara County Jail. The defendants can be divided into two groups: the State defendants were Daniel Stewart, the former Chairman of the New York State Commission of Correction, and Thomas Beilein, current Chairman of the New York State Commission of Correction and former Niagara County Sheriff (collectively the "State defendants"); and the Niagara County defendants are movants Sam Muscarella, acting Niagara County Sheriff; Niagara County Jail major John Saxton; Niagara County Jail Captain Duane Vandetta, and Beilein (for allegations against him as the Sheriff) (Docket No. 1, Compl.) (Muscarella, Saxton, Vandetta, and Beilein in his former capacity as Niagara County Sheriff will be collectively referred to as the "Niagara County defendants").

Plaintiff alleges claims against Beilein in both his county and state official capacities (see Docket No. 13, Defs. Memo. at 2 n.1).

In March and July 2007, plaintiff was issued written misbehavior reports and found guilty of those charges for a series of misconduct actions and violations of Niagara County Jail rules. He was sentenced to the punitive segregation unit time. (Docket No. 1, Compl., "Statement of Facts," ¶ 1.) This occurred again in August 2008 (id. ¶ 2). While serving punitive segregation unit time, plaintiff filed grievances contesting the 2007 and 2008 disciplinary hearings that led to his sentence (id. at ¶ 3). He also grieved the conditions while in punitive segregation unit time, claiming, for example, that inmates there were denied access to music, a general library, pictures, proper nutrition, medical examinations and evaluations, and any items from visitors (id. ¶ 6). These grievances were denied and plaintiff appealed the denials to the Commission of Correction which also denied them (id. ¶ 8). The Commission did find that the facility inappropriately took $2.75 from plaintiff's inmate account deposited by his visitors, and inappropriately denied him books and magazines furnished by visitors (id.).

Plaintiff alleges that he was deprived of his rights under the Fifth, Eighth, and Fourteenth Amendments by being deprived of due process, equal protection of the laws, and being subjected to double jeopardy (id. at 4, "Cause of Action"). Beilein as Niagara County Sheriff and Muscarella (as Acting Sheriff) were responsible for jail administration for the Niagara County Jail, with Saxton responsible for overseeing and managing jail administration, while Vandetta had oversight over the jail grievance process (id.). Plaintiff claims that defendants deprived him of his rights by "deliberately failing to correct the following conditions" while in the punitive

segregation unit: denying plaintiff music and outside communications outlets, denying photographs, denying general library services, and denying proper nutrition (id. at 4-5).

He next claims that defendants violated state regulations in the manner in which these hearings were conducted. First, he contends that the disciplinary hearings did not have a recording mechanism, that he was deprived the right to personally question a witness, and that he was denied the right to receive a signed disciplinary proceeding disposition. He claims that he was subject to being twice put in jeopardy for the same incident. Plaintiff also claims that the disciplinary hearing process denied him his right to privacy, since the disciplinary proceeding occurred in front of plaintiff's cell within earshot of other inmates. (Id.)

As for his detention in punitive segregation, plaintiff also claims that he was deprived of $2.75 in his inmate account and denied books, magazines, and periodicals from visitors (id.). He alleges that he had "substantial weight loss from lack of proper nutrition while housed" in the Niagara County Jail punitive segregation unit (id. at 5-6), that he suffered constant mental anguish, mood changes, depression, and ambivalence as a result of being deprived of music, pictures, and access to the general library, and the loss of $25 from the facility's money machine (id. at 6). Plaintiff seeks unspecified amounts of compensatory damages, punitive damages, and declaratory relief that defendants stop taking funds deposited by visitors in inmates' accounts and defendants be ordered to allow books and other reading material to be brought into the facility (presumably into the punitive segregation unit) from visitors (id. at 6-7).

The Niagara County defendants, including Beilein (as former Sheriff), answered on January 31, 2011 (Docket No. 9). The Court issued a Scheduling Order (Docket No. 11).

Beilein represented by the New York Attorney General later moved (with Stewart) to dismiss claims against him as a New York State official for lack of subject matter jurisdiction and failure to state a claim (Docket No. 13). They also sought a stay of proceedings during the pendency of this motion to dismiss (id.); this was denied. They first argue that plaintiff failed to establish their personal involvement to make them liable under 42 U.S.C. § 1983 (id. at 5-8). The State defendants assert that plaintiff's due process rights were not violated and they claim immunity under the Eleventh Amendment (id. at 8-9, 9-10). This Court recommended granting the State defendants' motion (Docket No. 31) and plaintiff filed his Objections to that Report & Recommendation (Docket No. 32). These Objections were rejected by Chief Judge Skretny (Docket No. 43, Order of Jan. 24, 2012), dismissing claims against some of the state defendants. Thus, the only remaining defendants are the Niagara County defendants (id.; see Docket No. 59, Defs. Memo. at 2).

*Plaintiff's Motions to Compel*

Meanwhile, the Niagara County defendants exchanged discovery with plaintiff (Docket Nos. 15, 16) and plaintiff moved to compel discovery from them (Docket No. 26; cf. Docket No. 19, plaintiff's first attempt at filing motion). This Court denied that motion (Docket No. 36). Plaintiff then filed a second motion to compel (Docket No. 44). Plaintiff sent a notice to this Court that the Niagara County defendants had failed to respond to his discovery (Docket No. 45, Notice dated Dec. 23, 2011, filed Jan. 19, 2012).

While this action was pending, plaintiff was charged in a federal Indictment, United States v. Hill, 11CR78A. Plaintiff was ordered detained pending trial in that action, id., Docket Nos. 13, 16. Pertinent to this action, plaintiff has been in the custody of the United States

Marshal and has been transferred from various facilities. Plaintiff has been moved several times since being in the Niagara County jail and even during the course of this action. He alleged that the United States Marshal has misplaced his legal papers for this action (and other civil actions); in particular, he alleged that on December 28, 2011, the United States Marshal took plaintiff into custody and moved him from the Allegany County Jail, seizing his property (Docket No. 44, Motion at 2). This second motion (including the reply "motion," Docket No. 52) renewed earlier discovery requests responded to by defendants but purportedly lost during plaintiff's moves. He claims that the Niagara County defendants had not responded to his earlier discovery demands, and sought sanctions (Docket No. 44, Pl. Motion, at 2).

The Niagara County defendants responded that they have furnished discovery to plaintiff responsive to his demands more than once and did so again in response to his latest motion (Docket No. 51, Defs. Atty. Decl. ¶ 2, Exs. A (defendants' response to request for discovery, dated Mar. 9, 2012, with document), B (response to Plaintiff's Interrogatories, also dated Mar. 9, 2012)). Defendants offered to produce other materials for in camera inspection prior to producing to plaintiff (id. ¶ 3). In their response, defendants objected to some responses (see id. Exs. A, B).

This Court held that the Niagara County defendants were not responsible for plaintiff's moves and hence not required to recreate plaintiff's lost discovery (Docket No. 56, Order of Apr. 12, 2012, at 8, 9). This Court then terminated plaintiff's reply motion (Docket No. 57) filed a week after the Order denying the previous motion to compel (Docket No. 60).

*Niagara County Defendants' Motion for Summary Judgment*

Plaintiff was incarcerated in the Niagara County Jail during parts of 2007 and 2008 (Docket No. 59, Defs. Statement ¶ 1-2), detained before going into state custody (see Docket No. 59, Engert Decl. ¶¶ 17-18). On March 2007, July 2007, and August 2008, plaintiff was disciplined for misconduct in the Jail and sent to the Jail's punitive segregation unit (or "PSU") (Docket No. 59, Defs. Statement ¶ 2). Plaintiff was placed in PSU for 101 days between March 28 and July 6, 2007, and was sanctioned for 125 days and served 74 days until he was released into state custody, with a total confinement in PSU in 2007 of 174 days (Docket No. 59, Defs. Memo. at 15-16). In 2008, plaintiff was confined to PSU for 34 days (id. at 16). Plaintiff commenced grievances challenging the disciplinary proceedings leading to this placement and the conditions in the PSU previously described.

According to Daniel Engert, the administrative captain for the Corrections Division of the Sheriff's Department, the Niagara County Jail did not use video or audio recording devices during disciplinary proceedings (Docket No. 59, Engert Decl. ¶ 12), but inmates in those proceedings are given the opportunity to speak for themselves, call witnesses, and present evidence (id. ¶ 13). Inmates are given a copy of the decision from the disciplinary hearing, as required by General Order 1305, with the disciplinary hearing report filed in triplicate (one copy to the inmate, one for the disciplinary records file, and one for the inmate's file) (id. ¶ 15). Engert claims that plaintiff was provided a copy of his disciplinary hearing reports (id. ¶ 16).

Engert states that the Niagara County Jail did not have general library services for either the general population or punitive segregation unit (id. ¶ 19) He described the conditions for inmates in the Jail generally and those for inmates in the Jail's punitive segregation unit. Inmates

housed in punitive segregation were not allowed televisions or radios, were allowed one personal item (such as a book), one newspaper, and all legal papers (id. ¶¶ 20, 21). All inmates in the jail were allowed to purchase books or magazine directly from the publishers through the Jail Commissary or by mail, provided that the publications did not pose a threat to the safety, security, and good order of the facility (id. ¶¶ 22, 23). Inmates in the punitive segregation unit had access to the law library, religious services, and recreation (id. ¶ 24) and received the same diet and medical care as general population inmates received (id. ¶ 25). The manner of visits for inmates in the punitive segregation unit may vary (between contact or non-contact) but the duration of visits allowed was the same as those in general population (id. ¶ 26). The four punitive segregation unit cell blocks (of fourteen total in that building) were in a building and had facilities the same as others within that building (id. ¶ 27). Punitive segregation inmates showered but at specific times rather than the unrestricted access afforded to general population inmates (id. ¶ 28).

In 2007, the Niagara County Jail used a kiosk, like an automatic teller machine, to take inmate deposits; the operators of this kiosk charged a $2.75 convenience fee for transactions (id. ¶¶ 29-30), that fee was not collected by the Jail (id. ¶ 30). This fee could be avoided by inmates depositing money in ways other than directly through the machine (such as by telephone, online, or money order deposits) (id. ¶ 31). In 2007 and 2008 the New York State Commission of Correction had no regulations regarding the use of kiosks or the fees they may impose, but in 2009 (with input from the Niagara County Jail administration), the Commission set a limit on the convenience fee for kiosks of $5 maximum per transaction, 9 N.Y.C.R.R. § 7016.2 (id. ¶¶ 34-35).

The moving defendants first argue that the statute of limitations barred plaintiff's claims prior to June 28, 2007, since a three-year limitations period for federal civil rights actions was applicable, see Taylor v. Mayone, 626 F.2d 247, 252 (2d Cir. 1980), and the Complaint here was filed on June 28, 2010 (Docket No. 59, Defs. Memo. at 4). They contend that plaintiff failed to allege their personal involvement (id. at 4-6). The Niagara County defendants next argue that plaintiff had not established a violation of his Fifth Amendment double jeopardy rights, since they were not applicable here (id. at 6-7) or that Amendment's Due Process rights (id. at 13-18). They also argue that plaintiff cannot sustain an Eighth Amendment cruel and unusual punishment claim (id. at 7-13). The Niagara County defendants next explain that the County assessed a convenience fee of $2.75 for use of the kiosk and plaintiff now claims that he was deprived of that fee amount (id. at 18-19). They uphold their policy regarding inmate access to periodicals and other publications, concluding that the policy meets constitutional muster (id. at 19-20). They next claim that plaintiff failed to allege how he was treated differently than other inmates to state an Equal Protection claim (id. at 21). As for any claims against these defendants in their official capacities, the moving defendants assert sovereign immunity under the Eleventh Amendment (id. at 21-22) and the individual defendants assert qualified immunity (id. at 22-24). Finally, defendants conclude that punitive damages may not be awarded against them in their official capacities (id. at 24-25).

*Plaintiff's Cross-Motion*

In his cross-motion, plaintiff argues that the disciplinary proceedings that led to his incarceration in the PSU were conducted in violation of his due process rights (Docket No. 65, Pl Cross-Motion). He argues that he had a liberty interest violated by defendants due to their

arbitrary and capricious confinement of inmates (id. at 10). He also complains of the living

conditions in the PSU (id. at 14-17). He contends that all inmates, those in PSU and those in

general population, were deprived of reading material from visitors (id. at 47).

Defendants respond that plaintiff's cross-motion is untimely, since dispositive motions

were due by May 31, 2012, and plaintiff's motion had not been filed when defendants responded

in July 6, 2012 (Docket No. 63, Defs. Atty. Reply Decl., Ex. A, Defs' Objections to Pl. Counter

Motion for Summary Judgment (hereinafter "Defs' Objections") at 1). The Court filed plaintiff's

cross-motion on July 9, 2012 (Docket No. 65, filed July 9, 2012, dated June 29, 2012). The

Niagara County defendants fault plaintiff for failing to follow requirements that a Notice of

Motion accompany his motion, that the memorandum not exceed 25 pages[1], W.D.N.Y. Loc. Civ.

R. 7(a)(1), (2)(c), and that the motion lacked a supporting affidavit or evidence presented with an

appropriate foundation, id. R. 7(a)(3) (id., Defs' Objections at 2). Plaintiff also failed to include

a statement of material facts for which there is no dispute (id.). After seeking an extension of

time to respond (id., Defs' Objection at 3), defendants argued that plaintiff's request for

discovery was untimely under the latest version of the Scheduling Order (id.).

Plaintiff, in reply, claims that the papers were postmarked on June 27, 2012, and invoked

the prison mailbox rule, see Houston v. Lack, 487 U.S. 266, 271, 108 S. Ct. 2379, 2382, 101 L.

Ed.2d 245 (1988) (a pro se prisoner litigant's papers are deemed to have been filed when they are

placed in the hands of prison officials for mailing); see also Dory v. Ryan, 999 F.2d 679, 682 (2d

---

[1]Absent leave of the Court for an excessive brief, W.D.N.Y. Loc. Civ. R. 7(a)(2)(C). No such request was made by the pro se plaintiff here.
    Plaintiff here submitted 49 handwritten pages for his statement of facts (almost 6 pages) and memorandum combined into a single document, Docket No. 65.

Cir. 1993), modified on reh'g, 25 F.3d 81 (2d Cir. 1994), that his motion was timely (Docket No. 67, Pl Response to Reply at 1).

**DISCUSSION**

I.      Summary Judgment Standards

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir.

2002).  The opponent to summary judgment may argue that he cannot respond to the motion

where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to

justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a

separate, short, and concise" statement of material facts, and if movant fails to submit such a

statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2)

(effective Jan. 1, 2011).  The movant is to submit facts in which there is no genuine issue, id. R.

56(a)(1), while the opponent submits an opposing statement of material facts as to which it is

contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph

in the movant's statement will be deemed admitted unless specifically controverted by a

correspondingly numbered paragraph in the opponent's statement, id.  Each statement of material

fact is to contain citations to admissible evidence to support the factual statements and all cited

authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

The pleading of a pro se plaintiff is to be liberally construed, see Haines v. Kerner,

404 U.S. 519 (1972) (per curiam).

II.     Defense Summary Judgment Motion

Where plaintiff's cross-motion arguments are addressed in defendants' motion, this

Report will consider them with determination of defendants' motion.

A.      Statute of Limitations

For federal civil rights actions, courts borrow the most appropriate state law cause of

action's limitations period, Board of Regents v. Tomanio, 446 U.S. 478 (1980); Johnson v.

Railway Express Agency, 421 U.S. 454, 462 (1975); see Taylor, supra, 626 F.2d at 250-51.  For

12

civil rights actions, three years is the relevant period under New York law, N.Y. CPLR 214(2); Taylor, supra, 626 F.2d at 251-52 (rejecting CPLR 215(1) and its one-year limitations period where it is a civil rights action against a sheriff).

Plaintiff does not address defendants' statute of limitations argument. According to defendants, plaintiff's claims that arose prior to June 28, 2007, are time barred. Plaintiff alleges that in March 2007 and July 2007 misbehavior reports were written against him. As a result, claims arising from the March 2007 misbehavior report, and his housing in the punitive segregation unit prior to June 28, 2007, are time barred and **should be dismissed** and defendants **should be granted summary judgment** as to those claims. But what remains are claims arising from the July 2007 misbehavior report and the 2008 misbehavior report.

B.    Personal Involvement

Next, the Niagara County defendants charge that plaintiff fails to show their respective personal involvement with his various deprivations to sustain his civil rights damage claims (Docket No. 59, Defs. Memo. at 4-6), Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). They contend that simply being part of the prison chain of command is insufficient to establish liability, see Saxon v. Attica Medical Dep't, 468 F. Supp. 2d 480, 482 (W.D.N.Y. 2007) (Larimer, J.) (id. at 4).

Plaintiff responds that defendants were aware of his complaints through the grievance process (Docket No. 64, Pl. Response at 3-4), apparently to counter the Niagara County defendants' argument of lack of personal involvement. But plaintiff only establishes exhaustion of administrative remedies. He has not shown that the individual defendants named were

involved in the claims alleged against them. Merely being on notice through the grievance or appeal process does not make a defendant liable.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991); see Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colon, supra, 58 F.3d at 873. The Second Circuit in Colon instructs that to establish personal involvement of a supervisory defendant (such as the Niagara County defendants), plaintiff needs to introduce evidence that

> "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring,"

Colon, supra, 58 F.3d at 873 (citing Wright, supra, 21 F.3d at 501).

During the relevant period in this case, Beilein was Niagara County Sheriff (through 2008, when he became Chairman of the state Commission of Correction); Muscarella was Acting Niagara County Sheriff in 2008; Saxton was a major in the Sheriff's Department assigned to the Jail; and Vandetta was a captain in the department responsible for coordinating inmate grievances (Docket No. 59, Defs. Statement ¶¶ 3, 4, 5, 6). For these supervisory positions held by the Niagara County defendants, plaintiff needed to establish these officers' personal involvement in the alleged deprivations. For example, Vandetta coordinated grievances but none of plaintiff's allegations attack how his grievances were processed.

14

Plaintiff has not establish that defendants created an infringing policy or their direct participation in any of the alleged wrongs or show that they were grossly negligent in supervising staff who committed wrongful acts. He does not show that defendants exhibited deliberate indifference to the rights of inmates by failing to act on information that unconstitutional acts were occurring. Cf. Colon, supra, 58 F.3d at 873. His only basis may be that defendants, after being informed of the violation through a report or appeal, failed to remedy the situation, Colon, supra, 58 F.3d at 873. This allegation alone is insufficient to establish a material issue of fact to preclude summary judgment on whether defendants had personal involvement here. Therefore, on the basis of the lack of established personal involvement, defendants' motion for summary judgment **should be granted**. For a complete record, other defenses and plaintiff's claims will be considered next.

C.  Fifth Amendment Violations

Plaintiff alleged double jeopardy and due process violations under the Fifth Amendment.

1.  Double Jeopardy

As for the double jeopardy claim, there is no violation of plaintiff's Fifth Amendment double jeopardy rights, since (as previously found, see Docket No. 31, Report & Recommendation of Aug. 12, 2011, at 11) his disciplinary proceedings were not criminal proceedings and the Double Jeopardy clause only involves criminal prosecutions, Breed v. Jones, 421 U.S. 519, 528 (1975); Goston v. Potter, No. 9:08CV478, 2010 U.S. Dist. LEXIS 121039, at *23 (N.D.N.Y. Sept. 21, 2010) (Baxter, Mag. J.), and prison disciplinary proceedings are not criminal prosecutions and do not implicate the Double Jeopardy Clause, Porter v. Selsky, 287 F. Supp. 2d 180, 190-91 (W.D.N.Y. 2003) (Curtin, J.); Goston, supra, 2010 U.S. Dist. LEXIS

121039, at *23. (Docket No. 31, Report & Rec. at 11; <u>see</u> Docket No. 59, Defs. Memo. at 6-7).

Therefore, summary judgment on the Niagara County defendants' arguments against plaintiff's

double jeopardy claims also should be **granted**.

2.      Disciplinary Hearing Procedures and Liberty Interests

As for plaintiff's Fifth Amendment due process claim (as opposed to the Fourteenth

Amendment applicable to states and municipalities like these defendants), the Niagara County

defendants argue that the disciplinary hearing process was in accord with plaintiff's due process

rights (Docket No. 59, Defs. Memo. at 13-15).  Citing the Report & Recommendation filed in

this action (Docket No. 31, at 10; <u>see</u> Docket No. 59, Defs. Memo. at 14), they reiterate that

disciplinary hearings are more limited than other proceedings, where inmates do not have a right

to confront witnesses or have the proceedings recorded.  Although plaintiff states a due process

violation for not receiving a written disposition of the charges, defendants argue that plaintiff

fails to provide specific facts in support of the allegation (Docket No. 59, Defs. Memo. at 14).

Engert stated in his declaration that the usual practice was to provide the disciplinary reports to

the inmate and, upon information and belief, this happened with plaintiff (Docket No. 59, Engert

Decl. ¶¶ 14-15, 16; Docket No. 59, Defs. Memo. at 14-15; Docket No. 59, Defs. Statement

Appx., Ex. D (General Order 1305, II. H.)).

To establish a deprivation of due process during a disciplinary hearing, an inmate needs

to show that he possesses a liberty interest and that defendants deprived him of that interest due

to insufficient process, <u>Thomas v. Calero</u>, 824 F. Supp. 2d 448, 500 (S.D.N.Y. 2011); <u>McAllister</u>

<u>v. Garrett</u>, No. 10 Civ. 3828, 2012 U.S. Dist. LEXIS 141828, at *14 (S.D.N.Y. Sept. 25, 2012)

(Preska, J.).  Determining whether the inmate has a liberty interest depends whether his

incarceration in segregated housing was atypical, different or punitive so as to require additional process beyond that for housing in the general population. In <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995), the Court held that an inmate's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" where "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody," <u>see</u> <u>McAllister</u>, <u>supra</u>, 2012 U.S. Dist. LEXIS 141828, at *14.

The duration of plaintiff's time in PSU dictates the level of scrutiny to determine if plaintiff was deprived of liberty, that is whether his incarceration in that special custody was so "atypical and significant hardship" to differ from other routine prison conditions, <u>Wright v.</u> <u>Coughlin</u>, 132 F.3d 133, 136 (2d Cir. 1998). For the 2007 period in PSU, plaintiff was housed for a total of 174 days, an "intermediate" period warranting a fact-intensive comparison between conditions in punitive housing and general population to determine if plaintiff has a protected liberty interest. (Docket No. 59, Defs. Memo. at 15-16.) The Niagara County defendants point out that confinement in PSU was not significantly different than being in general population (<u>id.</u> at 16); the PSU was in the same building as general population cell blocks with identical facilities; inmates in PSU were not allowed certain entertainment equipment and had designated periods for showering and different degree of contact with visitors, but otherwise had the same conditions as inmates in general population (Docket No. 59, Engert Decl. ¶¶ 17, 20, 21, 26, 24-25).

In 2008, plaintiff was in PSU for only 34 days, a minimal period of confinement that generally does not raise a protected liberty interest warranting due process protection, <u>McAllister</u>

v. Garrett, No. 10 Civ. 3828, 2011 U.S. Dist. LEXIS 99128, at *26-27 (S.D.N.Y. Sept. 1, 2011)

(Pitman, Mag. J.) (order denying appointment of counsel); McAllister v. Garrett, supra,

2012 U.S. Dist. LEXIS 141828, at *14-18 (S.D.N.Y. Sept. 25, 2012) (granting in part motion to

dismiss, dismissing due process claims).

Thus, for both periods of plaintiff's disciplinary incarceration, there is no protected liberty

interest that would mandate a certain level of due process prior to imposition of that discipline.

Defendants' motion for summary judgment as to this claim should be **granted**.

      D.      Cruel and Unusual Punishment

Plaintiff argues that two different Eighth Amendment violations have occurred during his

confinement in PSU:  the conditions in PSU and the deprivation of medical treatment.

      1.      Standards

Regarding the conditions of confinement at the PSU, the Eighth Amendment is violated

when conditions are inhumane, such as the deprivation of basic sanitation or exposure to extreme

cold, see Gaston v. Coughlin, 249 F.3d 156, 164-65 (2d Cir. 2001) (Docket No. 59, Defs. Memo.

at 8).

As for the deprivation of medical care, in order to state a claim, plaintiff must allege that

defendants acted with "deliberate indifference to [a] serious medical need," LaGrange v. Ryan,

142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble, 429 U.S. 97, 104 (1976); see

also Gregg v. Georgia, 428 U.S. 153, 173 (1976) (the Eighth Amendment prohibits infliction of

"cruel and unusual punishments" which includes punishments that "involve the unnecessary and

wanton infliction of pain.") (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.

1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  "To establish an

unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Hathaway, supra, 37 F.3d at 66 (quoting Estelle, supra, 429 U.S. at 104). Mere negligent treatment or malpractice upon a suspect, however, does not create an Eighth Amendment violation, see Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972). This claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind. Hathaway, supra, 37 F.3d at 66. "Sufficiently serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66). Plaintiff needs to prove that defendants wantonly intended to cause him to suffer, Wilson v. Seiter, 501 U.S. 294, 302 (1991).

        2.     Conditions of Confinement in PSU

The Niagara County defendants argue that plaintiff is unable to prove that conditions in PSU were "sufficiently serious" to deny him of life's necessities (Docket No. 59, Defs. Memo. at 8). They argue that alleged deprivations (denial of music, photographs, access to the general library--as opposed to the law library), are not objectively, sufficiently serious to meet the objective prong of an Eighth Amendment cruel and unusual punishment claim (id. at 8-9, 7, 9 n.1). Defendants claim that plaintiff received a diet in PSU of 2,400-2,800 calories per day, a level found to be appropriate in Sostre v. McGinnis, 442 F.2d 178, 186 (2d Cir. 1971) (in banc), overruled on other grounds, see Davidson v. Scully, 144 F.3d 12 (2d Cir. 1997) (per curiam) (id. at 10).

Review of the conditions in the PSU shows that they do not significantly differ from those in general population. While both areas lack general library services, inmates in either the PSU or general population cell blocks may order books from publishers. Inmates in both places receive the same diet and medical care. The deprivation plaintiff complains about were either common to both settings in the Niagara County Jail (the absence of general library services, the level of nutrition and available medical care, the denial of books from sources other than the publishers) (cf. Docket No. 1, Compl. ¶ 6 and at page 5), or were de minimis (denial of photographs, although the PSU allows inmates to keep one personal item; denial of music or music-playing equipment). Plaintiff does not raise a material issue of fact as to the condition in the PSU to deprive defendants of summary judgment.

3.      Medical Care

As for plaintiff's claimed deprivation of medical care while in PSU, defendants reply that he was examined weekly while in the PSU (Docket No. 59, Defs. Memo. at 11-12; Docket No. 59, Statement Appx. Ex. C (plaintiff's medical records while in Niagara County Jail)). While denying that he had weekly examinations while in the PSU, plaintiff complained about his broken wrist but states that he was examined on March 29, April 3, April 10, May 11, and 22, 2007 (Docket No. 64, Pl. Memo. at 11-12). Plaintiff fails to raise a material issue of fact as to the frequency of his medical appointments while in the PSU. Further, as discussed above, the March 2007 incarceration in the PSU (including the periods of examinations on his wrist) are time barred. Thus, plaintiff fails to meet the objective prong for a deliberate indifference claim or for a cruel and unusual punishment conditions claim. Defendants' motion for summary judgment on these claims **should be granted**.

20

E.	Convenience Fee

Defendants contend that they allowed a kiosk to collect a convenience fee of $2.75 from depositing inmates, although disclaiming that the County collected the fee. Plaintiff argues that the fee is illegal under New York Correction Law § 500-a (Docket No. 65, Pl. Cross-Motion at 43), almost conceding that there is no constitutional violation for imposition of such a convenience fee. Courts have upheld imposition of convenience fees upon inmates to access their accounts, Humphrey v. Gootkin, No. CV 09-00092-BU-SEH-RKS, 2010 U.S. Dist. LEXIS 118389, at *8 (D. Mont. Oct. 6, 2010) (Strong, Mag. J.), adopted, 2010 U.S. Dist. LEXIS 118308 (D. Mont. Nov. 8, 2010) (Docket No. 59, Defs. Memo. at 19). This Court should not interpret the Constitution as barring imposition of such a convenience charge upon inmates. Plaintiff and other inmates can avoid this fee with the Niagara County Jail kiosk by depositing (or arranging deposits) online or by other indirect means.

Alternatively, this claim could be entertained as a state law violation under this Court's supplemental jurisdiction. This Court, however, should **decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367**. This Court may decline to exercise that jurisdiction for a state law claim if it has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3). As discussed above (and in following discussion), plaintiff's federal civil rights claims should be dismissed and this Court should not entertain his state law claim that he should not have to pay a service fee for using a kiosk placed in the Jail for the convenience of the inmates.

F.	Inmate Access to Publications

Plaintiff next complains that inmates in punitive segregation were deprived access to periodicals, even those provided by visitors for the inmates.  Defendants deny this, contending that inmates in PSU and out have access to periodicals either from the prison commissary or by mail order.  But plaintiff's complaint is that inmates cannot receive materials from visitors.  In Bell v. Wolfish, 441 U.S. 520, 550-51 (1979), the Supreme Court upheld Metropolitan Correctional Center's restriction on receiving books unless mailed by publishers as not violating the First Amendment rights of inmates, in part to control the entry of contraband shipped by others through delivered hardcover books (Docket No. 59, Defs. Memo. at 20-21) and the restriction was content neutral, Wolfish, supra, 441 U.S. at 551.

Since plaintiff (as well as other Niagara County inmates) have access to reading material from other sources, the fact that they are denied borrowed material from visitors is not a constitutional violation.  Niagara County has a legitimate penological interest in controlling the manner in which inmates receive reading material and the potential means for shipping contraband.  Defendants' motion for summary judgment on this ground should be **granted** and plaintiff's cross-motion should be **denied**.

G.	Equal Protection Claim

Niagara County defendants conclude that plaintiff was treated the same as other inmates and that plaintiff had not established the contrary (Docket No.59, Defs. Memo. at 21).  This claim also should be **denied**.

H.	Immunities, Sovereign or Qualified

The moving defendants alternatively invoke two forms of immunity from suit.

### 1. Eleventh Amendment Sovereign Immunity

First, under the Eleventh Amendment, they claim that they, as sheriff's department officials, are immune under New York State's sovereign immunity, see Brown v. Middaugh, 41 F. Supp. 2d 172, 192 (N.D.N.Y. 1999) (Docket No. 59, Defs. Memo. at 21-22). The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," U.S. Const. amend. XI.

### 2. Qualified Immunity

Second, the Niagara County defendants argue that they enjoy qualified immunity.

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). As required by the Saucier Court, this Court first considered (above) the constitutional question, then considered the qualified immunity question, id. The discussion above indicates whether a constitutional violation occurred. But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity. Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317,

1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

This Report considered first the substantive claim and then the qualified immunity question. Given the dispositions discussed above on the merits of plaintiff's constitutional claims, this Court **need not address defendants' qualified immunity or Eleventh Amendment sovereign immunity claims**.

I.      Punitive Damages

Plaintiff seeks punitive damages for defendants' deliberate indifference (Docket No. 1, Compl. at page 7). Finally, defendants conclude that punitive damages may not be awarded against them in their official capacities, Cash v. County of Erie, No. 04CV182, 2007 U.S. Dist. LEXIS 50129, at *16-18 (W.D.N.Y. July 11, 2007) (Curtin, J.) (Docket No. 59, Defs. Memo. at 24-25). This Court agrees; even if plaintiff somehow prevails on the merits, he is not entitled to punitive damages against government officials sued in their official capacities, id., 2007 U.S. Dist. LEXIS 50129, at *16. Defendants believe that plaintiff sued them in their official and individual capacities (id. at 24), but a review of the Complaint (Docket No. 1) does not state the basis upon which plaintiff sues these parties. As for the official capacity claim, which naturally arises from the allegations in the Complaint, defendants are not liable for punitive damages.

On the individual capacity basis, punitive damages against government officials is warranted only if the conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others," Smith v. Wade, 461 U.S. 30, 56 (1983); Cash, supra, 2007 U.S. Dist. LEXIS 50129, at *17. Plaintiff has not alleged those types of assertions to support punitive damages. Therefore, if damages were to be awarded, plaintiff **is not entitled to punitive damages**; defendants' motion for summary judgment on this basis also **should be granted**.

III.    Plaintiff's Cross-Motion

Given the disposition recommended for the Niagara County defendants' motion above, the previous Report and Recommendation rejecting plaintiff's claim to a private disciplinary proceeding (see Docket No. 31, Report & Recommendation at 12), and the discussion of claims and defenses common in both parties' motions, plaintiff's cross-motion to find liability against these defendants should be **denied**. Plaintiff also included in his cross-motion incidents in the Niagara County Jail in **2011** (Docket No. 65, Pl. Statement ¶¶ 22-23; cf. Docket No. 68, Defs. Response to Pl. Statement ¶¶ 22-23) without seeking leave to amend the Complaint, well after the events alleged in the Complaint in this action. This Court **should not address these contentions**.

As for plaintiff's belated request for additional discovery (Docket No. 65, Ex. E), and as noted by defendants, the time for discovery concluded on January 31, 2012 (Docket No. 39), without further extension or request to extend. If viewed as a motion to extend and to compel discovery, plaintiff's requests **are denied**. Plaintiff has not argued that he was unable to respond

to defendants' summary judgment motion; in fact, plaintiff extensively responded to that motion (as noted in this Report above). Thus, further discovery here is not warranted.

## CONCLUSION

Based upon the above, it is recommended that Niagara County defendants' motion for summary judgment (Docket No. 59) be **granted** and plaintiff's cross-motion for partial summary judgment (Docket No. 65) be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 26, 2012